Submitted on certified question from the United States District Court Order dated May 29; certification accepted August 14, 1992, certified question answered March 4, 1993

Cynthia BRAUN,
*Plaintiff,*

*v.*

# AMERICAN INTERNATIONAL HEALTH & REHABILITATION SERVICES, INC.,
a Delaware Corporation;
and Human Affairs International, Inc.,
a Utah Corporation,
*Defendants.*

(USDC 90-1358-DA; SC S39325)

846 P2d 1151

James S. Coon, of Royce, Swanson, Thomas & Coon, Portland, filed the brief and argued the cause for plaintiff.

Jody Wilner Moran, of Connelly, Sheehan & Moran, Chicago, Illinois, argued the cause for defendant American International Health & Rehabilitation Services, Inc. With her on the brief was Thomas M. Christ, of Mitchell, Lang & Smith, Portland.

No appearance for defendant Human Affairs International, Inc.

GILLETTE, J.

## GILLETTE, J.

■ This employment discrimination case presents a question of law certified to this court by the United States District Court for the District of Oregon. *See generally* ORS 28.200 to 28.255 (statutes governing certification). As discussed more fully below, we have reframed the certified question as follows:[1]

> "Is it an unlawful employment practice under ORS 659.425(1)(a) for an employer to discharge from employment an alcoholic employee whose present use of alcohol prevents her from performing the duties of her job, if that employee denies having any problem with alcohol?"

We conclude that the answer is "no."

We take the following relevant facts from the certification order:[2]

> "Plaintiff Braun has been an alcoholic since 1965. From December 1987 until May 1989, Braun worked for AIHRS [defendant American International Health & Rehabilitation Services, Inc.] as a senior rehabilitation supervisor. During her employment, Braun was unaware that she was an alcoholic and, in fact, denied any problem with alcohol. Nonetheless, Braun's alcoholism negatively affected her performance at AIHRS.

> "Braun never asked for any type of accommodation for her alcoholism. In March 1988, co-worker, David Smith ('Smith'), and Braun's supervisor, Barbara Merritt ('Merritt'), met with Braun regarding her 'probable substance abuse.' Braun was then referred to AIHRS' employee assistance program ('EAP'). This program is offered through an

---

[1] The original question certified by the United States District Court for the District of Oregon was as follows:

> "Is an alcoholic, whose present use of alcohol prevents her from performing the duties of her job, a 'disabled person' under ORS 659.425(1)(a)?"

At oral argument, it became clear that the parties were in agreement that the District Court's certified question did not satisfactorily present the pertinent legal question. The parties were granted a period of time in which to find an alternative question acceptable to both. Because they have been unable to agree on an alternative, we have fashioned one. *See Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 370, 811 P2d 627 (1991) ("this court * * * has the discretion to reframe questions and is not bound to answer the question as certified").

[2] ORS 28.210(2) provides that the certification order "shall set forth * * * [a] statement of all facts relevant to the questions certified."

agreement between AIHRS and co-defendant HAI [Human Affairs International, Inc.].

"In May 1988, Braun met with Robert Johnson ('Johnson'), an HAI counselor, who had been informed of Braun's possible substance abuse. At that meeting, Braun minimized her alcohol use; denied having a drinking problem; and denied that her alcohol consumption affected her work. Based on this interview, Johnson reported to Linda Bern ('Bern'), director of AIHRS' Health Advisory Program, that Braun was a 'social drinker,' but did not abuse alcohol.

"From May 1988 to March 1989, plaintiff's supervisors continued to note problems with her work performance and, occasionally, the smell of a strong odor [of alcohol]. On June 29, 1988, Bern contacted Johnson and discussed Braun's problem. Johnson stated that he had spoken with Braun once since their May 2, 1988[,] meeting and that she had reported that everything was 'fine.' Johnson said that if Braun contacted him again, he would arrange for an alcohol evaluation and possible in-patient rehabilitation. Braun did not contact Johnson.

"In December 1988, David Griffiths ('Griffiths') became Braun's supervisor. He issued written and verbal warnings to Braun about her performance. Griffiths discharged Braun [on] May 11, 1989[,] and this action ensued."

Plaintiff's action involves, in part, a claim that defendant AIHRS[3] engaged in an unlawful employment practice of discrimination based on disability. Specifically, plaintiff alleges that defendant terminated her employment without reasonably accommodating her alcoholism, an act that plaintiff claims is in violation of ORS 659.425(1)(a), set out *infra*. Regarding this claim, the District Court certified its question to this court, and we accepted the certification on August 14, 1992.

As pointed out at oral argument, ORS 659.425(1)(a), the statute specifically referred to by the federal court, does not use the term "disabled person." Rather, that statute provides:

"For the purposes of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to

---

[3] Plaintiff's claims against defendant Human Affairs International, Inc., are not relevant to the certified question before us. Our references to "defendant" throughout this opinion refer to defendant AIHRS.

hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved[.]"

Consequently, this court has exercised its discretion to reframe the question in the manner set out at 462, *ante*.[4]

■ The answer to the reformulated question depends, in turn, on the answer to an underlying question: Is alcoholism a "physical or mental impairment" within the meaning of ORS 659.425(1)(a)? To answer that question, we must determine whether the legislature intended the phrase "physical or mental impairment" in ORS 659.425(1)(a) to encompass alcoholism. *See Teeny v. Haertl Constructors, Inc.*, 314 Or 688, 694, 842 P2d 788 (1992) ("In interpreting a statute, this court's duty is to discern the intent of the legislature."). Because the phrase "physical or mental impairment" is not defined in the statute,[5] and because the phrase is not self-explanatory, we consider legislative history to determine the legislature's intended meaning. *See Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990) ("When the language of the statute does not provide sufficient insight into legislative intent, it is appropriate to consider legislative history."). That history suggests that alcoholism is a "physical or mental impairment" within the meaning of ORS 659.425(1)(a).

■ The legislature first enacted ORS 659.425 in 1973 as part of the Handicapped Persons' Civil Rights Act. Or Laws 1973, ch 660, § 7. That enactment made it unlawful to discriminate in employment "because an individual has a

---

[4] Although it is not indicated in the statement of facts contained in the certification order, it is undisputed in this case that defendant is an "employer" within the meaning of ORS 659.425(1). For purposes of ORS 659.425(1), "employer" means "any person who employs six or more persons and includes the state, counties, cities, districts, authorities, public corporations and entities and their instrumentalities, except the Oregon National Guard." ORS 659.400(3).

[5] The Bureau of Labor and Industries has adopted rules interpreting ORS 659.425 and related statutes. OAR 839-06-200 to 839-06-255. As used in those rules, "physical or mental impairment" means "an apparent or medically detectable condition which weakens, diminishes, restricts or otherwise damages an individual's health or physical or mental activity." OAR 839-06-205(7). That definition does not clear up the ambiguity — it is itself ambiguous.

physical or mental handicap, unless it can be shown that the particular handicap prevents the performance of the work involved." *Id.* § 7(1) (codified as ORS 659.425(1) (1973)). "Physical or mental handicap" was defined to mean "a physical or mental disability including but not limited to sensory disabilities and resulting in a handicap unrelated to a person's ability to perform the duties of a particular job or position for which he would otherwise be eligible and qualified for employment or promotion." *Id.* § 2(1) (codified as ORS 659.400(2) (1973)).[6] The statute did not define the phrase "physical or mental disability," however, and there was nothing in the statute to reveal whether that phrase included or excluded alcoholism.[7]

■ In 1979, House Bill 3126 was introduced to amend ORS 659.400 to 659.430. The main purpose of the bill was to clarify the definition of "handicap" and to include the concept of "reasonable accommodation" with respect to the employment of handicapped persons. *See* Minutes, House Committee on Human Resources, May 31, 1979, pp 1-4 & Exhibit B (testimony on behalf of Oregon Chapter of the National Rehabilitation Association, one of the bill's requestors). The bill accomplished this purpose by conforming the Oregon law with provisions of a federal law, the Rehabilitation Act of 1973, Pub L No 93-112, 87 Stat 355 (codified as amended at 29 USC §§ 701-796i (1988 & Supp 1990)). *See, e.g.*, Minutes, Senate Committee on the Judiciary, June 27, 1979, p 1 (indicating that the purpose of HB 3126 was to "conform the statutory definition in ORS 659 * * * more closely with the federal law using sections 503 and 504" of the Rehabilitation

---

[6] In *Montgomery Ward v. Bureau of Labor*, 280 Or 163, 166-67, 570 P2d 76 (1977), this court commented on the "inconsistent statutory language" of these two sections:

"Because a disability unrelated to a job can *never* prevent performance of the job, there is no way the language commencing with the word 'unless' in ORS 659.425(1) can make much sense. This leaves the statutes saying that it is unlawful to refuse to hire someone because of disability when the disability is unrelated to the job involved. This tells us very little about the disability which justifies a refusal to employ." (Emphasis in original.)

[7] We note, however, that, under the original versions of ORS 659.400 and 659.425, set out *supra*, even if alcoholism fell within the meaning of the phrase "physical or mental disability," plaintiff's alcoholism would not have been considered a "physical or mental handicap" entitling her to the protection of the statutes, because her alcoholism *was* related to her ability to perform her particular job; indeed, it prevented her performance.

Act of 1973); House and Staff Measure Analyses of HB 3126 (contained in original bill file) ("The measure clarifies and places the state statutes in conformity with the federal laws"). Because the revisions contained in HB 3126 were modeled after federal law, it is appropriate, in determining the intended scope of those revisions, to examine the scope of the federal law on which they were based.

■ The Rehabilitation Act of 1973 prohibits discrimination against individuals with handicaps in three different settings.[8] Section 501 of the Act (codified at 29 USC § 791) requires agencies of the federal government to implement affirmative action programs for hiring individuals with handicaps.[9] Section 503 of the Act (codified at 29 USC § 793) also requires federal contractors to take affirmative action to employ individuals with handicaps.[10] And section 504 of the Act (codified at 29 USC § 794) prohibits discrimination against individuals with handicaps by programs receiving federal funding.[11]

---

[8] In 1979, the Rehabilitation Act used the term "handicapped individuals." A 1986 amendment substituted "individuals with handicaps" throughout sections 501, 503, and 504. Rehabilitation Act Amendments of 1986, Pub L No 99-506, 100 Stat 1807.

[9]

"Each department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch shall * * * submit * * * an affirmative action program plan for the hiring, placement, and advancement of individuals with handicaps in such department, agency, or instrumentality."

29 USC § 791(b) (1988).

[10]

"Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal service (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract, the party contracting with the United States shall take affirmative action to employ and advance in employment qualified individuals with handicaps as defined in section 706(8) of this title."

29 USC § 793(a) (1988).

[11]

"No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

29 USC § 794(a) (1988).

In 1977, the Attorney General of the United States issued an opinion that concluded that "alcoholism could reasonably be characterized as 'a physical or mental disability' within the meaning of * * * the Act" and that "alcoholics * * * are 'handicapped individuals' for purposes of Title V of the Act." 43 Op US Atty Gen 12 (1977). (Title V includes sections 501, 503, and 504.) In 1978, however, Congress chose to settle the question by amending the Act to exclude active alcoholics[12] from the coverage of sections 503 and 504, as those sections relate to employment. Pub L No 95-602, § 122, 92 Stat 2955, 2984-85 (1978) (codified at 29 USC § 706(8)(C)(v) (Supp 1990)). Under that amendment, "an alcoholic * * * whose current use of alcohol * * * prevents such individual from performing the duties of the job in question" was no longer considered a "handicapped individual" for purposes of sections 503 and 504. *Ibid.* Yet, under section 501, active alcoholics remained covered. *See, e.g., Crewe v. U.S. Office of Personnel Management*, 834 F2d 140, 142 (8th Cir 1987) ("This limitation, by its terms, applies only to §§ [50]3 and [50]4."); *Whitlock v. Donovan*, 598 F Supp 126, 129 (DDC 1984) ("Federal alcoholic employees who are using alcohol excessively are protected under * * * Section 501"), *aff'd without opinion*, 790 F2d 964 (DC Cir 1986).

Thus, in 1979, when HB 3126 was introduced into the Oregon legislature, active alcoholics were considered "handicapped individuals" under section 501, but not under section 503 or 504. Defendant makes much of this distinction, arguing that, because HB 3126 was based on sections 503 and 504, rather than on section 501, the Oregon legislature did not intend to encompass active alcoholism within the phrase "physical or mental impairment" in ORS 659.425(1)(a). For the reasons that follow, we are unpersuaded.

The legislative history of HB 3126 reveals that the language in the final version of the bill was derived from regulations promulgated under section 503 (41 CFR §§ 60-741.1 to 60-741.54).[13] Tape recording, House Committee

---

[12] For purposes of this case, we use the term "active alcoholic" to refer to an alcoholic who presently is using alcohol. Such a person is distinct from an alcoholic who is not presently using alcohol (*i.e.*, an "arrested" or "controlled" alcoholic).

[13] Some of the legislative history suggests that HB 3126 was patterned after regulations promulgated under section 504, or after sections 503 and 504 them-

on Labor, June 18, 1979, Tape 35, Side 2 at 218-355. The purported reason for basing the bill on those regulations was to ensure that employers in Oregon already subject to section 503 (*i.e.*, federal contractors) would face substantially the same obligations under Oregon law. *Ibid.* However, the regulations chosen as a model for the Oregon law, although promulgated under section 503, did not contain any exclusion of active alcoholics from the term "handicapped individual."[14]

The explanation for this discrepancy between the statutes and the regulations is suggested by the fact that the regulations were published in October 1978, 43 Fed Reg 49,276 (1978), a month before the statutory amendment excluding active alcoholics was enacted in November 1978. This chronology suggests that the regulations that were the basis for HB 3126 were themselves based on section 503 in the form in which that section existed before the 1978 amendment. Thus, the regulations were based on the version of the statute that had been interpreted by the Attorney General of the United States to include active alcoholics within its coverage.

Defendant argues, however, that the 1978 statutory amendment that excluded active alcoholics from the coverage of section 503 is irrelevant because, even before that amendment, section 503 covered only "qualified" handicapped individuals,

---

selves. *See, e.g.*, Minutes, House Committee on Human Resources, June 5, 1979, p 2 (legislative counsel indicates that "the language in the bill is modeled after the federal 504"). However, the language in the initial version of the bill was taken from regulations promulgated under section *501. Compare* original bill (contained in the original bill file) *with* 29 CFR § 1613.702 (regulation of the Equal Employment Opportunity Commission governing employment of the handicapped by federal agencies under section 501). The bill was revised substantially, however, and testimony before the House Committee on Labor reveals that the this revision was based on language from regulations promulgated under section 503 (41 CFR §§ 60-741.1 to 60-741.54). Tape recording, House Committee on Labor, June 18, 1979, Tape 35, Side 2 at 218-355.

[14] The regulations define "handicapped individual" as "any person who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment." 41 CFR § 60-741.2 (1992). "Qualified handicapped individual" is defined as "a handicapped individual as defined in § 60-741.2 who is capable of performing a particular job, with reasonable accommodation to his or her handicap." *Id.* Active alcoholics are not expressly excluded from either term.

and an alcoholic whose alcoholism prevented her from performing her job was not "qualified" within the meaning of the statute. According to defendant, "[t]he Oregon legislature would, as a result, have been aware that following §§ 503-504 of the federal law meant that active alcoholics whose performance was adversely affected would not be protected." There is support for this argument in the Opinion of the Attorney General referred to above. 43 Op US Atty Gen 12 (1977). However, that argument ignores the specific language of the regulations on which HB 3126 was based. Those regulations define "qualified handicapped individual" as "a handicapped individual * * * who is capable of performing a particular job, *with reasonable accommodation to his or her handicap.*" 41 CFR § 60-741.2 (1992) (emphasis added). By including the concept of "reasonable accommodation," the regulation ensures that the inability to perform a job arising from an individual's handicap does not make that person unqualified, unless that inability remains after the employer has attempted reasonable accommodation.

■ In summary, but for the 1978 federal statutory amendment, the regulations under section 503 would encompass active alcoholics who reasonably could be accommodated. Because there is nothing in the legislative history of HB 3126 to indicate that the Oregon legislature was aware of the 1978 amendment to the federal law or otherwise intended to apply such an exclusion to the Oregon law, we assume that the legislature did not intend the Oregon law to be interpreted as containing such a complete exclusion. Consequently, we conclude that alcoholism is a "physical or mental impairment" within the meaning of ORS 659.425(1)(a).

This brings us to the certified question itself, which we restate here for convenience:

> "Is it an unlawful employment practice under ORS 659.425(1)(a) for an employer to discharge from employment an alcoholic employee whose present use of alcohol prevents her from performing the duties of her job, if that employee denies having any problem with alcohol?"

For the reasons that follow, we conclude that the answer is "no."

■ ORS 659.425(1)(a) makes it an unlawful employment practice to discharge an employee because that employee "has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved." The statute imposes on an employer a duty to make reasonable accommodation for its employees' physical and mental impairments. *See* OAR 839-06-245 ("ORS 659.425 imposes an affirmative duty upon an employer to make reasonable accommodation for an individual's physical or mental impairment where the accommodation will enable that individual to perform the work involved in the position occupied or sought"); *see also* 41 CFR § 60-741.6(d) (1992) (regulation under section 503) ("A contractor must make a reasonable accommodation to the physical or mental limitations of an employee or applicant").

In this case, plaintiff contends that defendant had a duty to accommodate her alcoholism, even though she had not yet been diagnosed as an alcoholic, because defendant suspected that plaintiff suffered from "probable substance abuse." Defendant argues, on the other hand, that it had no duty to accommodate an impairment that plaintiff denied having and for which plaintiff sought no accommodation. To resolve this issue, we must determine when the legislature intended an employer's duty of reasonable accommodation to arise under ORS 659.425(1)(a).

In seeking the answer to this question, the language of the statute offers no assistance. While ORS 659.425(1)(a) imposes a duty of reasonable accommodation, the language of the statute does not suggest what circumstances do or do not give rise to that duty. Thus, we are left to seek guidance elsewhere.

Plaintiff argues that the duty of reasonable accommodation arose in this case when defendant suspected plaintiff of "probable substance abuse." To support her argument, she relies on federal case law applying section 501 of the Rehabilitation Act of 1973. Regulations promulgated under section 501 require governmental employers to "make reasonable accommodation to the *known* physical or mental limitations" of an employee. 29 CFR § 1613.704(a) (1992) (emphasis added). Nevertheless, with respect to alcoholism in particular, some federal courts have held that a federal

employer's duty to follow a rigorous course of "reasonable accommodation"[15] does not depend on the employer's affirmative knowledge of an employee's alcoholism, but is triggered "when an employee's performance deficiencies are *suspected* to be due to alcohol." *Whitlock v. Donovan, supra*, 598 F Supp at 133 (emphasis added); *see also Rodgers v. Lehman*, 869 F2d 253, 259 (4th Cir 1989) (accommodation must begin "[w]hen the agency suspects that an employee's poor job performance results from alcoholism").

The difficulty with the authorities on which plaintiff relies is that the standards that the federal government requires itself to meet as an employer of the disabled under section 501 are much higher than the standards that the government requires state and local governments and private employers to meet under sections 503 and 504. Section 501 was "intended to make the federal government a model employer of the handicapped." *Crewe v. U.S. Office of Personnel Management, supra*, 834 F2d at 142; *see also* 29 CFR § 1613.703 (1992) ("The Federal government shall become a model employer of handicapped individuals."). With regard to alcoholism in particular, the extensive scope of the government's self-imposed duty of reasonable accommodation (*see* note 15, *supra*) arises not only from section 501, but also from other federal law and internal publications that apply only to the federal government. *Whitlock v. Donovan, supra*, 598 F Supp at 130-33. Taken together, those sources "show Congress's firm intention to require federal employers to exert substantial affirmative efforts to assist alcoholic employees toward overcoming their handicap before firing them for performance deficiencies related to drinking." *Id.* at 131.

There is no equivalent showing that the Oregon legislature intended to impose such high standards on private

---

[15] The "reasonable accommodation" that a *federal* employer *must* make for an alcoholic employee was recently described by the Ninth Circuit Court of Appeals:

" '[R]easonable accommodation' requires that a governmental employer follow a progression of increasingly severe responses to an employee's alcoholism. The employer should (1) inform the employee of available counseling services; (2) provide the employee with a 'firm choice' between treatment and discipline; (3) afford an opportunity for outpatient treatment, with discipline for continued drinking or failures to participate; (4) afford an opportunity for inpatient treatment, if outpatient treatment fails; and (5) absent special circumstances, discharge the employee for further relapse."

*Fuller v. Frank*, 916 F2d 558, 562 (9th Cir 1990).

employers under ORS 659.425(1)(a). On the contrary, legislative history suggests that the legislature consciously chose to impose a lesser burden on employers under ORS 659.425(1)(a) by modeling that law after section 503 regulations rather than section 501 regulations. *See* note 13, *supra,* and accompanying text. We conclude that the legislature did not intend to impose on Oregon employers the same high standards that the federal government imposes on itself, including the requirement that an employer accommodate an employee based on mere suspicion of an impairment.

 Legislative history reveals that the legislature chose to leave development of the concept of "reasonable accommodation" to the Bureau of Labor and Industries in its administrative rules. Minutes, House Committee on Labor, June 18, 1979, p 1. Although they do not address the precise issue presented in this case, those rules support the conclusion that an employee's denial of an impairment vitiates the employer's duty of reasonable accommodation. Specifically, OAR 839-06-245, the Bureau rule governing reasonable accommodation, states, in part, that "[a] handicapped person who is an employee * * * *must cooperate* with an employer in the employer's efforts to reasonably accommodate the person's impairment." OAR 839-06-245(3) (emphasis added). Certainly, an employee who denies to her employer that she has an impairment could not be said to cooperate with that employer's efforts at accommodation.

 We also note that acceptance of the argument urged by plaintiff could place an employer in an untenable position, caught between two different parts of ORS 659.425(1). Paragraph (c) of that statute makes it unlawful to treat an employee as having an impairment, when that employee in fact has no impairment.[16] Under plaintiff's argument, if an employer *suspected* an impairment that the employee denied

---

[16] ORS 659.425(1) states that "it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because * * * (c) [a]n individual is regarded as having a physical or mental impairment." ORS 659.400(2)(c) states, in part, that the phrase " '[i]s regarded as having an impairment' means that the individual * * * (A) [h]as no physical or mental impairment but is treated by an employer or supervisor as having an impairment."

having, the employer would face this choice: (1) do not accommodate the suspected impairment, in which case, if the employee actually *is* impaired, the failure to accommodate will constitute a violation of ORS 659.425(1)(*a*); or (2) accommodate the suspected impairment, in which case, if the employee is not impaired, the accommodation will constitute a violation of ORS 659.425(1)(*c*). Nothing in the statutes or the legislative history indicates that the legislature intended employers to face that kind of dilemma in seeking to comply with the provisions of ORS 659.425(1).

In light of the foregoing discussion, we conclude that the legislature did not intend to impose on employers a duty to accommodate an employee's physical or mental impairment due to alcoholism, if that employee denies having that impairment. Of course, denial is often associated with alcoholism. Further, successful treatment requires the individual to proceed beyond denial to recognition of the problem, and an employer may be able to facilitate such recognition. Nevertheless, though an employer may have the ability to facilitate an employee's recognition, for example, by offering a "firm choice" between treatment or discipline (*see* note 15, *supra*), we do not discern from the language or history of ORS 659.425(1)(a) that the legislature intended an employer's decision *not* to offer such a choice to constitute discrimination on the basis of disability.[17] Consequently, the answer to the certified question in this case is "no."

Certified question answered.

---

[17] No one questions that, if alcoholism is within the ambit of ORS 659.425 and the employee admits that she suffers from that condition, the duty of the employer to make a reasonable accommodation is triggered.