Argued and submitted May 12, reversed and remanded April 15, 1998

# James RUGEMER,
*Appellant,*

*v.*

# Lyndie Ann RHEA,
*Respondent.*

## (9412-08574; CA A91878)

957 P2d 184

Paul G. Dodds argued the cause for appellant. With him on the briefs was Brownstein, Rask, Arenz, Sweeney, Kerr & Grim, LLP.

Thomas W. Brown argued the cause for respondent. With him on the brief were Wendy M. Margolis and Cosgrave, Vergeer & Kester, LLP.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

Plaintiff appeals from a judgment based on a jury verdict upholding a release agreement. In the first stage of a bifurcated trial, the jury concluded that plaintiff was bound by a release agreement that he had entered into with defendant's insurer and thus was precluded from recovering damages. On appeal, plaintiff claims that the trial judge erred in granting defendant's two motions *in limine*, the first to exclude evidence of the extent of plaintiff's personal injuries and the second to exclude evidence of the insurance adjuster's conduct with respect to another claimant involved in the same accident. We reverse and remand.

On appeal from a jury verdict, we view the evidence in the light most favorable to the prevailing party, in this case defendant. *Holmes v. Morgan*, 135 Or App 617, 619, 899 P2d 738, *rev den* 322 Or 193 (1995). On March 6, 1994, plaintiff was driving his car through an intersection with a green light when defendant ran a red light, hitting plaintiff's car after glancing off another vehicle. Karrie Moore, plaintiff's girlfriend, and her son Danny were passengers in plaintiff's car. Plaintiff's lower neck, Moore's hip, and Danny's jaw were injured in the accident.

Defendant was insured by State Farm. Vanderwood, a State Farm claims adjuster, investigated the accident and determined that liability for the accident was not at issue; defendant was at fault. Vanderwood then attempted to settle the insurance claims in the case by contacting plaintiff and his girlfriend by telephone and having another adjuster meet with plaintiff at the State Farm office. On March 15, 1994, nine days after the accident, Vanderwood met with plaintiff and settled the claim for the property damage to his car for $1,046 and suggested settling the personal injury claim for $500. Plaintiff had seen a doctor about his accident injuries five days earlier. At that time, the doctor was not sure of plaintiff's medical condition. He gave plaintiff some pain medication and asked to see him again the following week. Plaintiff had not had a follow-up visit with the doctor at the time of settlement. When plaintiff told Vanderwood that he was still sore, but that the soreness went away with Tylenol

or aspirin, Vanderwood offered plaintiff $800 for his personal injuries. Plaintiff accepted the settlement, signing a complete release. According to plaintiff and Moore, at the time of the settlement, plaintiff felt fine and, according to plaintiff, he "wanted to get it over with."

At trial, plaintiff testified that, during the settlement meeting, Vanderwood stated that he had a doctor's report indicating that plaintiff was "okay." Plaintiff testified that he signed the release only because he relied on Vanderwood's representation. Vanderwood denied making such representations. It is uncontested that Vanderwood did not have, and had not seen, a doctor's report on plaintiff. Immediately after obtaining plaintiff's release, Vanderwood telephoned Moore and then met with her at her home a few days later to settle her son's claim. She also signed a release. In an offer of proof at trial, Moore testified that Vanderwood told her that he had a doctor's report that indicated that her son and plaintiff were okay. Vanderwood denied making that statement to Moore.

Plaintiff testified in an offer of proof that after he signed the release his neck condition grew worse. He underwent neck fusion surgery for two severed disks, incurring $30,000 to $35,000 in medical expenses and missing three-and-one-half months of work. He then filed this lawsuit seeking damages for his injuries caused by defendant's negligence. Defendant relied on the release as an affirmative defense. Plaintiff's reply alleged that the release was invalid because it had been obtained by misrepresentation and in violation of the Unfair Claim Settlement Practices Act. ORS 746.230(1)(f).

The parties agreed to bifurcate the trial, with the first stage determining the validity of the release and the second stage, if necessary, determining damages. Before the first stage of trial, the court granted defendant's two motions *in limine*, the first to exclude evidence of the extent of plaintiff's injuries and the second to exclude evidence of Vanderwood's dealings with Moore. Following trial, the jury found that the release was valid and rendered a verdict for defendant.

Plaintiff first assigns error to the trial court's grant of defendant's motion *in limine* to exclude evidence of the extent of his injuries discovered after the release was signed. Defendant argued that, because the trial was bifurcated, evidence of the extent of plaintiff's injuries should not be allowed until the second stage of the trial on damages. The trial court accepted defendant's argument and excluded the evidence. Although it is not entirely clear from the record, it appears that the trial court determined that the evidence was irrelevant to the first stage of the trial.

■■ We review rulings on relevance for errors of law. *Lakin v. Senco Products, Inc.*, 144 Or App 52, 70 n 14, 925 P2d 107 (1996), *rev allowed* 325 Or 438 (1997); *Fugate v. Safeway Stores, Inc.*, 135 Or App 168, 173, 897 P2d 328 (1995). Under OEC 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence is not relevant if it is not probative of the fact or proposition at which it is directed. *Holger v. Irish*, 316 Or 402, 419, 851 P2d 1122 (1993) (Unis, J., concurring).

■■ Plaintiff claims that the release he signed was voidable as an illegal contract[1] because it violated the Unfair Claim Settlement Practices Act, which provides:

> "No insurer or other person shall commit or perform any of the following unfair claim settlement practices:
>
> "* * * * *
>
> "(f) Not attempting, in good faith, to promptly and equitably settle claims in which liability has become reasonably clear[.]" ORS 746.230(1)(f).

Plaintiff claims that the full extent of his injuries is relevant to whether Vanderwood attempted to "equitably settle" his claim.[2] Plaintiff argues that the disparity between the amount of the settlement and the actual medical costs

---

[1] Illegal contracts may be rescinded by the party not at fault. *State v. Pettit*, 73 Or App 510, 513, 698 P2d 1049, *rev den* 299 Or 522 (1985).

[2] Vanderwood admitted that liability was not at issue in this case.

incurred by him tends to show that the settlement was not equitable. We disagree.

■ The equity of a settlement is judged as of the time it is made. In *Raymond v. Feldmann*, 120 Or App 452, 853 P2d 297, *on recons* 124 Or App 543, 863 P2d 1269 (1993), *rev den* 318 Or 381 (1994), we held that a release is not voidable on the ground of mutual mistake simply because, at the time of settlement, the plaintiff did not realize the nature and extent of her injuries. Without a showing that the agreement was obtained by misrepresentation or unconscionable conduct, an improvident agreement may not be voided. *Wheeler v. White Rock Bottling Co.*, 229 Or 360, 366 P2d 527 (1961). The mere disparity between the amount of a settlement and the actual damages suffered by a party does not make that settlement invalid or inequitable. Plaintiff presents no other theory as to why evidence of his actual injuries is relevant to the validity of the release. Because plaintiff fails to show how evidence of the extent of his injuries discovered after settlement is relevant to prove that Vanderwood did not "equitably settle" plaintiff's claim, it was properly excluded.

■■ Plaintiff contends in his second assignment of error that the trial court erred in excluding evidence of Vanderwood's dealings with Moore. Plaintiff made an offer of proof that Moore would testify that Vanderwood untruthfully told her that he had a doctor's report indicating that her son was okay in order to induce her to sign a release. The trial court excluded the evidence under OEC 404(3), which provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ In *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992), the Supreme Court formulated a three-part test for determining the admissibility of "other act" evidence under OEC 404(3):

> "(1) The evidence must be independently relevant for a non-character purpose; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was

committed and that defendant committed it; and (3) the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or considerations set forth in OEC 403." (Footnotes omitted.)

The trial court here ruled under the first part of this test, stating that plaintiff's evidence did not meet any of the statutory exceptions. We review this issue as a question of law. *State v. Westby*, 117 Or App 14, 17-18, 843 P2d 973 (1992), *on recons* 124 Or App 265, 862 P2d 1318 (1993), *rev den* 318 Or 351 (1994).

The Supreme Court has held that OEC 404(3) is an inclusionary rule, not an exclusionary one. *State v. Johns*, 301 Or 535, 548, 725 P2d 312 (1986). The statutory list of exceptions is not exhaustive. "The inclusionary rule in this state allows Oregon judges to resort to *any theory of logical relevance* when ruling on 'prior crime' evidence that does not run afoul of the 'propensity to commit crimes or other acts' prohibition." *Id*. (emphasis supplied).

Here, plaintiff is attempting to prove that the release he signed violates the Unfair Claim Settlement Practices Act. One element of the statute is that the insurer must attempt to settle "in good faith." ORS 746.230(1)(f). Plaintiff claims that Vanderwood told him that he had a doctor's report indicating that plaintiff was okay. Because it is uncontested that Vanderwood did not have such a report, evidence that Vanderwood made the claimed statement would show that he did not act in good faith.

Moore's testimony that Vanderwood also told her that he had a doctor's report indicating that plaintiff and her son were okay tends to show that Vanderwood did, in fact, make virtually the same false statement to plaintiff. This is not mere propensity evidence, such as testimony that Vanderwood had made various unrelated misrepresentations to Moore in attempting to settle her claim. Rather, this is evidence of a specific subterfuge that Vanderwood had allegedly used successfully a few days earlier in settling plaintiff's claim. Evidence that a person used exactly the same lie to achieve the same goal on a different occasion makes it more likely that the person did, in fact, make the same statement at the time in question. Because of the similarity between

Vanderwood's purported statement to Moore and the statement that plaintiff claims Vanderwood made to him, the evidence is relevant to the validity of the signed release. The trial court erred in excluding it on relevancy grounds.

■      Defendant argues that, even if the trial court erred in excluding Moore's testimony, the error was not substantial under OEC 103(1) and does not support reversal. Prejudicial error occurs if the excluded evidence has some likelihood of affecting the jury's result. *Cunningham v. Montgomery*, 143 Or App 171, 181, 921 P2d 1355, *rev den* 324 Or 487 (1996). Here, Moore's testimony that Vanderwood had made virtually the same untrue statement to her to induce her to sign a release could, if believed, lead a jury to conclude that Vanderwood did, in fact, tell plaintiff that he had a doctor's report indicating that plaintiff was okay. Moore's testimony could have a substantial impact on the jury's determination of whether Vanderwood acted in good faith in securing plaintiff's release. Accordingly, we conclude that the trial court's error requires reversal.

■      Although the trial court did not reach the second step of the *Johnson* test, there are questions of law that may arise on remand, so it is necessary to address them now. Not only must the offered evidence be relevant for some purpose other than to prove propensity, the proponent of the evidence must also offer sufficient proof that the "other" act was committed and that the person against whom it is offered committed it.[3]

The issue is how to determine whether "sufficient proof" has been offered. Defendant argues that this is a preliminary question of fact for the trial judge to decide using a preponderance of the evidence standard under OEC 104(1),[4]

---

[3] The third party who committed the "other" act in this case was defendant's agent, and, accordingly, the analysis is the same as it is for the uncharged misconduct evidence referred to in *State v. Johnson*, 313 Or 189, 832 P2d 443 (1992).

[4] OEC 104(1) provides:

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. In making its determination the court is not bound by the rules of evidence except those with respect to privileges."

The Supreme Court has held that the judge is to use the preponderance standard in deciding preliminary questions of fact under OEC 104(1). *State v. Carlson*, 311 Or 201, 209, 808 P2d 1002 (1991).

citing *State v. Kim*, 111 Or App 1, 5, 824 P2d 1161, *rev den* 314 Or 176 (1992). Plaintiff argues that this is a question of conditional relevancy under OEC 104(2),[5] so that the proponent of the other act evidence would have to show only that there is sufficient evidence to support a finding of fact that the other act did occur. The *Johnson* court did not decide this issue, noting only that the choice is between OEC 104(1) and OEC 104(2). 313 Or at 201 n 12. However, this court decided the issue in *Kim*, holding that the question is one for the trial judge under OEC 104(1) and that the standard is preponderance of the evidence. 111 Or App at 5.

In *Kim*, we were faced with the question of the appropriate standard of proof for showing the connection between the defendant and the uncharged bad act. Notwithstanding the incongruous citation to OEC 104(2) that followed our statement that "[t]here is a preliminary question of fact for the trial court to resolve before evidence of a crime other than the one charged may be admitted," our analysis centered on OEC 104(1),[6] and we concluded that the preponderance of the evidence standard of OEC 104(1) was appropriate. *Id*. Kirkpatrick relies on *Kim* for this conclusion:

"Evidence of an alleged prior bad act by the defendant offered under Rule 404(3) is not admissible without a preliminary showing that the defendant committed such an act. The issue is for the court under Rule 104(1), and the applicable standard of proof is by a preponderance of evidence. *State v. Kim*, 111 Or App 1, 5, 824 P2d 1161, 1163, rev denied 314 Or 176, 836 P2d 1345 (1992). To admit evidence of alleged prior misconduct by the defendant without such a showing could be highly prejudicial." Laird C. Kirkpatrick, *Oregon Evidence* 141 (3d edition 1996).

---

[5] OEC 104(2) provides:

"When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

[6] Both of the Supreme Court cases that we cited, *State v. Pinnell*, 311 Or 98, *806 P2d 110 (1991), and Carlson*, 311 Or 201, deal with OEC 104(1), and we stated that "the court held that the preponderance standard applies to preliminary questions under OEC 104(1)." *State v. Kim*, 111 Or App 1, 5, 824 P2d 1161, *rev den* 314 Or 176 (1992).

Although federal courts apply the lesser conditional relevance standard of "evidence sufficient to support a jury finding," following *Huddleston v. United States*, 485 US 681, 108 S Ct 1496, 99 L Ed 2d 771 (1988), we are not bound by the *Huddleston* decision, which has met with widespread rejection and criticism. Kirkpatrick, *Oregon Evidence* at 141; *see also State v. Terrazas*, 189 Ariz 580, 944 P2d 1194 (1997) (declining to apply the *Huddleston* standard to Arizona Rules of Evidence); *Harrell v. State*, 884 SW2d 154, 160 (Tex Cr App 1994) (declining to follow *Huddleston*); *State v. McGinnis*, 193 W Va 147, 455 SE2d 516 (1994) (declining to follow *Huddleston*).

There are important reasons for requiring the proponent of other act evidence to meet the higher OEC 104(1) standard of preponderance of the evidence before it is sent to the jury. In the criminal context, the Supreme Court, in *State v. Pinnell*, 311 Or 98, 106, 806 P2d 110 (1991), warned of the dangers of other bad acts evidence, including "the risk that the jury will convict for crimes other than those charged, or because the accused deserves punishment for his past misdeeds," and that "the jury will give more weight to the evidence than it deserves in assessing guilt of the crime charged." In a footnote, the court added:

> "Unrelated misconduct evidence has been described as 'the most prejudicial evidence imaginable against an accused.' *People v. Smallwood*, 42 Cal 3d 415, 228 Cal Rptr 913, 922, 722 P2d 197, 205 (1986). Justice Cardozo stated that uncharged misconduct evidence can be a 'peril to the innocent.' *People v. Zackowitz*, 254 NY 192, 172 NE 466, 468 (1930)." *Id*. at 106 n 14.

Given the extreme dangers of such other act evidence, it is important to ensure that the act did, in fact, occur and that the accused party committed the act before the jury is allowed to consider it. The *Pinnell* court borrowed a phrase from another court to illustrate the problem of letting the jury hear such evidence: "A drop of ink cannot be removed from a glass of milk." *Id*. at 106 (quoting *Government of Virgin Islands v. Toto*, 529 F2d 278, 283 (3d Cir 1976)).

Another reason to require a showing by a preponderance of the evidence that the other act occurred is that the

other act and the charged act are mutually reinforcing. The evidence of the other act is intended to help prove that the party against whom it is offered committed the charged act but, by the same reasoning, the charged act reinforces the likelihood that the party was involved in the other act, thus increasing the likelihood that the jury will believe that *both* acts occurred. The requirement that the proponent of other act evidence prove its connection to the party against whom it is being offered by a preponderance standard, before the jury is allowed to hear it, is some insurance against exposing the jury to mutually reinforcing falsehoods.

Given the precedent of *Kim* and the dangers of exposing the jury to highly prejudicial other act evidence, we hold that the proponent of other act evidence must prove by a preponderance of the evidence under OEC 104(1) that the other act occurred and that the person against whom it is offered committed it.

Reversed and remanded.