Argued and submitted January 19, affirmed May 19, 1999

# CARDINELL CREST HOMEOWNERS ASSOCIATION,
a non-profit corporation,
*Respondent,*

*v.*

### Richard H. LORD,
an individual,
*Appellant,*

*and*

### Steven G. LORD,
an individual,
and S. G. Lord & Company,
an Oregon Corporation,
*Defendants.*

(9502-01182; CA A89328)

982 P2d 35

Teresa H. Pearson argued the cause for appellant. With her on the briefs was Greene & Markley, P. C.

David J. Sweeney argued the cause for respondent. With him on the brief were Paul G. Dodds and Brownstein, Rask, Arenz, Sweeney, Kerr & Grim, LLP.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

\* Deits, C. J., *vice* Warren, P. J., retired.

## EDMONDS, P. J.

Defendant[1] appeals from a judgment in favor of plaintiff on its breach of contract claim. He assigns error to the trial court's admission of certain testimony and to the trial court's refusal to give his requested jury instruction regarding the mitigation of damages. We affirm.

In 1986, defendant sold land on a Portland hillside to Steven Lord. Defendant maintained a security interest in the property. Thereafter, in 1987, defendant, as a declarant, signed a Maintenance Agreement that was attached as Exhibit A to a document entitled "Covenants, Conditions and Restrictions of the Phase I Development of R Lord Estates, A Planned Unit Development in the City of Portland, County of Multnomah, State of Oregon" (CC&Rs). Paragraph three of the Maintenance Agreement provides:

> "Declarants Richard H. Lord and Steven G. Lord shall be responsible for the initial construction, which shall be completed at least to City standards for private streets and utilities and in a good and workmanlike manner."

Article I of the CC&Rs provides, in part:

> "Declarants S.G. Lord and Co. and Richard H. Lord shall constitute the Association and the Architectural Control Committee until such time as 75% of the 12 lots (*i.e.* 9 lots) in Phase I have been sold. Within 60 days after recording the sale of the 9th lot sold, Declarants shall appoint a Board of Directors of the Homeowners Association, composed of three Owners of their choice who shall adopt bylaws and form a Homeowners Association (the Association), which shall be composed of the owners of all lots. The Association shall immediately accept delivery of the deed to all Common Areas and all responsibility for all Common Areas, including but not limited to maintaining utility service, including fire hydrants, storm and sanitary sewers, gas, and electric service, maintaining streets, bicycle paths, fire access roads * * *, and traffic barriers, purchasing insurance, if any, and in all respects enforcing these Covenants,

---

[1] Plaintiff brought its complaint against Richard H. Lord, Steven G. Lord and S. G. Lord & Company. Steven G. Lord and S. G. Lord & Company are not parties to this appeal. Thus, for purposes of this opinion, the term "defendant" refers to Richard H. Lord.

Conditions and Restrictions and otherwise governing R Lord Estates (see Exhibit A)."

Development of the property continued. In 1993, the plaintiff Homeowner's Association was formed by residents of the development. When plaintiff was in the process of having its attorney prepare its articles of incorporation, Steven Lord requested that plaintiff have its attorney prepare documents to transfer title to the common areas to the Homeowner's Association as well. However, because plaintiff understood, based on a title search, that the identity of the title holder was unclear, plaintiff refused Steven Lord's request. Consequently, no conveyance to plaintiff of title to the common areas occurred.

In 1995, plaintiff filed a complaint against defendant, Steven Lord and Lord's company, S. G. Lord & Company, that included a breach of contract claim. Before trial, plaintiff narrowed its allegations of breach to the following: (1) "failing to construct the road turnaround in the subdivision in a workmanlike manner in violation of paragraph 3 of the maintenance agreement"; (2) "failing to construct the main water line in the subdivision in a workmanlike manner in violation of paragraph 3 of the maintenance agreement"; and (3) "failing to complete the road up to lots 11 and 12 in violation of paragraph 3 of the maintenance agreement." Defendant denied liability and testified at trial that: (1) he had signed the CC&Rs and the Maintenance Agreement only for purposes of security; (2) he had not read the documents; and (3) he had not intended to assume any responsibility by signing the documents. A jury found in favor of plaintiff and awarded it damages in the amount of $294,203.

On appeal, defendant's first two assignments of error involve two evidentiary rulings made during trial. The first assignment concerns testimony by plaintiff's expert witness, Robert Huntsinger, regarding the alleged improper drainage of the road and the cost of repairing the problem. The following exchange occurred during trial:

"Q.  Now, Mr. Huntsinger, how do you fix that problem, that road draining [in] the wrong direction[?]

"[Defendant's Counsel]:  Objection. Relevancy. The complaint in this matter fits the claim for relief, breach of

contract, alleges three deficiencies, three alleged breaches of the contract, which you have identified as sub[sections] A, B, and C. A is concerning failing to construct the road turnaround and subdivision in a workmanlike manner. B is by failing to construct the main water line in the subdivision in a workmanlike manner. C is failing to complete the road up to lots 11 and 12 in alleged violation of the maintenance agreement. Now, when we had testimony from Mr. Robbins relative to the slope of the street as it related to the water line going in the house and the potential slope as conceivably breaking off one of the plastic lines in the future, although that has not occurred according to the evidence in the last couple of years, I made no objection, but this testimony is suggesting that the road is improperly constructed and that is not alleged in this complaint.

"* * * * *

"[Plaintiff's Counsel]: Mr. Robbins' testimony has been that the water line failures have been caused by differential pressure in the fill situation, the water saturation caused in the fill area, causing that differential. * * *

"[Judge]: I'm going to overrule the objection."

As Huntsinger continued to testify about the ways in which the drainage problem could be repaired and the estimated costs, the following exchange occurred:

"Q. And is Exhibit '53' the cost that it would take to rebuild the road so that the reverse drainage problem will be solved and that there will be no water that will soak into the fill beneath the edge of the road.

"A. Yes.

"[Defendant's Counsel]: Your Honor, may I have a continuing objection to this line of questioning.

"[Judge]: You may."

In his opening brief to this court, defendant assigns error as follows:

"The Circuit Court on examination of witness Robert W. Huntsinger erred in failing to sustain objections to testimony about the road allegedly draining in the wrong direction and the cost of repairing the alleged drainage problem."

He contends that the alleged drainage defects of the whole road are not relevant to any claim of breach. Additionally, we understand him to argue that the trial court's admission of Huntsinger's testimony was prejudicial because "it may have infected the jury's verdict." According to defendant, the trial court's "erroneous use of a general verdict form instead of [defendant's] special verdict form made it impossible to detect how the erroneous admission of evidence affected the jury." Plaintiff, in its brief, responded that the testimony was relevant to the cause of the water line failures. Thereafter, in his reply brief, defendant conceded:

> "Defendant * * * does not assign error to admission of evidence that merely discusses the fact that an alleged drainage problem may have been a *cause* of the failure of the water lines. * * *
>
> "Moreover, Defendant * * * does not assign error to the inclusion of general testimony concerning how the alleged drainage problem may have been repaired." (Emphasis in original.)

Then defendant clarified his assignment of error in his reply brief as follows:

> "The Circuit Court on examination of witness Robert W. Huntsinger erred in failing to sustain objections to testimony about the cost of repairing the alleged drainage problem of the whole road."

He concludes that the "cost of repairing any alleged drainage defects has nothing to do with the cause of the water line breakages" nor to any claim of breach.[2]

In *State v. Engweiler*, 118 Or App 132, 135, 846 P2d 1163, *rev den* 317 Or 486 (1993), we held that we would "not consider objections to testimony not urged before the trial court." One of the rationales behind this rule is that

> "[a] party owes the trial court the obligation of a sound, clear and articulate motion, objection or exception, so as to

---

[2] Here, defendant used his reply brief to clarify the issues that appeared in his opening brief. It should not be implied from this opinion that it is permissible appellate practice to raise issues in a reply brief that do not appear in the opening brief. *See* ORAP 5.45(2), 5.70(1); *see also Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991).

permit the trial judge a chance to consider the legal contention or to correct an error already made." *Shields v. Campbell*, 277 Or 71, 77, 559 P2d 1275 (1977).

At trial, defendant's objection related to the following question: "Now, Mr. Huntsinger, how do you fix that problem, that road draining [in] the wrong direction[?]" Defendant's original objection to Huntsinger's line of testimony was that the testimony was irrelevant because the plaintiff had not alleged in the complaint that defendant had breached the contract by improperly constructing the road. Thereafter, Huntsinger testified that Exhibit 53 indicates the cost to rebuild the road so as to reverse the drainage problem. Defendant then requested and was granted a continuing objection that did not specifically challenge the admission of Exhibit 53 but instead reiterated his original objection.

■ On appeal, defendant advances somewhat different grounds for the objection from those that he made at trial. He argues that the testimony concerning the *cost* of repairing the improper drainage of the road was irrelevant to the issue of the cause of the water line failures and to any claim of breach alleged in the case. Because those objections advanced on appeal were not made to the trial court as part of defendant's original and continuing objection, they are not preserved for purposes of appeal. ORAP 5.45(2). However, to the extent that defendant reiterates on appeal his objection that evidence of problems with the road is not relevant to what plaintiff pled, the evidence was properly admitted under plaintiff's theory as part of the chain of causation to show why defendant was responsible for the water line failure.

Defendant's second assignment of error concerns the trial court's admission of testimony regarding "the value of the Park Terrace Apartments owned by Defendant." The Park Terrace Apartments are located downhill from the development. After defendant testified on direct examination that he did not intend to assume responsibility for performance of the CC&Rs and the Maintenance Agreement for the development, the following exchange occurred during cross-examination:

"Q. And you owned the Park Terrace Apartments, did you not[?]

"A.   Yes.

"Q.   The Park Terrace Apartments, are very important to you, aren't they, sir[?]

"A.   Yes.

"Q.   And they're in excess of 2-1/2 million dollars, aren't they[?]

"A.   No. Not unless—it depends on the cap rate. And you know what —

"Q.   You've been offered in excess of 2-1/2 million dollars for them, haven't you[?]

"[Defendant's Counsel]:   Objection, Your Honor[.][3]

"[Judge]:   Overruled.

"* * * * *

"Q.   [Defendant], the Park Terrace Apartments, they're worth over 2-1/2 million dollars. You want to protect the Park Terrace Apartments. They're right below this, aren't they. It's sitting right there. Right.

"A.   Yes. * * *

"* * * * *

"Q.   Now, the maintenance agreement also allows you to enforce the obligations against the purchasers of those lots, doesn't it. You've read very carefully now, haven't you[?]

"A.   Yeah, well I didn't know that I could go against them for anything.

"Q.   Well, it was important, wasn't it sir, that this development be maintained properly to protect your investment down here.

"A.   Correct. * * *"

On appeal, defendant contends that the value of the apartments is irrelevant to whether he breached the contract

---

[3] It is apparent that plaintiff's line of questioning on cross-examination was intended to impeach defendant's credibility when he testified that he did not intend to assume responsibility for the performance of the CC&Rs and the Maintenance Agreement and that the objection was to the relevance of those questions. *See* OEC 103(1)(a).

in the manner specified in the allegations in the pleadings. Plaintiff responds:

"Evidence that defendant owned property worth a substantial amount of money, property that could be adversely impacted in the event of poor maintenance of the subject property, makes it more probable than not that defendant signed the CC&Rs and maintenance agreement in order that he could have a hand in maintaining the subject property in such a way as to protect his investment in the Park Terrace Apartments. This evidence was relevant in light of defendant's flat denials that he [ever] intended to be bound by the terms of the CC&Rs and the maintenance agreement."

■ We review rulings on the relevance of evidence under OEC 401 for errors of law. *Rugemer v. Rhea*, 153 Or App 400, 404, 957 P2d 184 (1998). OEC 401 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, defendant testified on direct examination that he had signed the CC&Rs and the Maintenance Agreement in error without intending to assume any responsibility. Evidence that defendant owned property downhill from the development that would benefit from the performance under the CC&Rs and the Maintenance Agreement has a tendency to make it more probable that defendant did intend to be responsible under the agreement. Moreover, the evidence of the value of the apartments supports that inference. "[O]nce an issue is raised on direct examination, it is fair game on cross-examination, even to the extent of inquiring into a different set of facts [from] those that were elicited on direct." *State v. Stevens*, 328 Or 116, 133, 970 P2d 215 (1998). Thus, the trial court did not err in ruling that the testimony was relevant.

■ Defendant also argues on appeal that, even if the evidence is relevant, its probative value is outweighed by the prejudicial effect of its admission, and the evidence should have been excluded under OEC 403. In *Engweiler*, 118 Or App at 134-35, we held that, although the defendant had objected to certain testimony during a pretrial hearing on the ground that it was inadmissible because it did not fall under

OEC 803(3) and had made a general objection during trial without referring to OEC 403, the issue of whether the testimony was unfairly prejudicial under OEC 403 was not preserved on appeal. Similarly, the general objection raised by defendant here did not preserve the issue of the testimony's admissibility under OEC 403. Thus, the trial court did not err in admitting the testimony concerning the value of the Park Terrace Apartments.

Defendant's final assignment of error concerns the trial court's refusal to give his requested instruction regarding mitigation of damages. Defendant requested the following instruction:

"A party damaged by a breach of contract is required to make reasonable efforts to minimize its loss.

"A party who fails to do so cannot recover for that portion of the loss it reasonably could have avoided." UCJI 65.20.

Instead, the trial court gave the following instruction:

"Now, let me talk a little bit about mitigation of damages. Normally a party damaged by a breach of contract is required to make reasonable efforts to minimize or mitigate its loss, however this duty to mitigate damages is not applicable in a situation where the breaching party has a duty to perform the contract, equal opportunity for performance of that contract, and equal knowledge of the consequences of its failure to perform the contract. Under this situation, the breaching party cannot be heard to say that the plaintiffs should have performed the breaching party's obligations under the contract."

On appeal, defendant assigns as error both the trial court's failure "to give the uniform jury instruction on mitigation of damages requested by" him and the instruction that the trial court actually gave. He argues that the result of the court's failure was that his theory of the case was not completely presented to the jury and, alternatively, that plaintiff's theory of the case was overemphasized. While the general rule is that a party injured by breach of contract must mitigate his or her damages, *Enco, Inc. v. F.C. Russell Co.*, 210 Or 324, 339-40, 311 P2d 737 (1957), there is an exception

to that rule. In *Parker v. Harris Pine Mills, Inc.*, 206 Or 187, 205, 291 P2d 709 (1955), the court explained:

> "However, this duty to mitigate the damages is not applicable where the party whose duty it is primarily to perform a contract 'has equal opportunity for performance and equal knowledge of the consequences of nonperformance.' In such cases, while the contract is subsisting and in force, such party cannot be heard to say that plaintiff might have performed for him."

■     Because the instruction given by the trial court adequately covers both the general rule and the exception and was content neutral, the trial court did not err by refusing to give defendant's requested instruction. *See Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998) (a trial court does not err by refusing to give a requested instruction if the substance of that instruction "was covered fully by other jury instructions given by the trial court").

Defendant's other arguments do not warrant discussion.

Affirmed.