David HONSTEIN,
*Appellant,*

*v.*

METRO WEST AMBULANCE SERVICE, INC.,
an Oregon corporation,
*Respondent.*

0103-02572; A119498

90 P3d 1030

Scott N. Hunt argued the cause for appellant. With him on the briefs were Richard C. Busse and Busse & Hunt.

Michael G. McClory argued the cause for respondent. With him on the brief was Bullard Smith Jernstedt Wilson.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Plaintiff, a paramedic, alleged that defendant, his employer, unlawfully fired him because of his disability and because he filed a claim for workers' compensation benefits. The jury returned a verdict for the defense. On appeal, plaintiff assigns error to the trial court's refusal to instruct the jury that, in order to prevail, defendant had to prove that accommodating plaintiff would impose an undue hardship. He also assigns error to the court's decision to admit certain evidence that plaintiff argued was irrelevant and prejudicial. Unpersuaded by any of plaintiff's arguments, we affirm.

In 1998, plaintiff sustained a back injury while lifting a patient into an ambulance. He filed a workers' compensation claim. Defendant accepted it, and plaintiff received disability benefits. He subsequently returned to work with restrictions on how much he could lift. Due to those restrictions, he could no longer work as a field paramedic because doing so would have required him to lift patients and equipment into and out of ambulances.

Defendant nonetheless found acceptable work for plaintiff. Defendant had a contract with an agency called RTS Management, which, in turn, had a contract with Cascade General shipyard to provide paramedics at the shipyard's first aid station. Plaintiff was assigned to that station, where the work was within his 50-pound lifting restriction. He worked there for almost two-and-one-half years.

In early 2001, however, Cascade General began to experience financial difficulties, and plaintiff was laid off. Although the causal relationship between Cascade General's financial condition and the decision to lay plaintiff off was vigorously contested at trial, the parties agree that, at the time of the layoff, defendant did not have enough work at Cascade General to constitute a full-time position that fit plaintiff's lifting restrictions. Plaintiff did receive temporary reassignment to another work location, but defendant's contract with that customer abruptly ended within days of plaintiff's reassignment, and plaintiff again found himself out of work.

Shortly after defendant laid him off, plaintiff filed a disability discrimination claim, alleging that defendant had failed reasonably to accommodate his disability and fired him in retaliation for his having filed a workers' compensation claim. According to plaintiff, defendant actually believed that Cascade General's financial downturn was temporary and that the shipyard would soon return to full operation but used Cascade General's financial condition as a pretext for unlawfully terminating plaintiff's employment. Plaintiff argued that defendant could and should have found him appropriate "stand-by" assignments until he was needed again at the shipyard. Defendant responded that, at the time it laid off plaintiff, it believed that Cascade General would never resume full operations at the shipyard and was on the verge of bankruptcy. It also argued that plaintiff's request for stand-by employment was not a reasonable accommodation because there was not enough appropriate stand-by work to constitute a full-time position, and defendant did not employ workers part time.

■■ In his first assignment of error, plaintiff argues that the trial court should have instructed the jury that, to prevail, defendant needed to prove that accommodating plaintiff's disability would have imposed an undue hardship. Plaintiff's suggested instruction included the following paragraphs:

"Under the law, an employer has a duty to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. Reasonable accommodations are modifications or adjustments that enable an employee to perform the essential functions of the job.

"* * * * *

"*An employer must accommodate an individual with a disability unless the employer proves by a preponderance of the evidence that such accommodation would impose an undue hardship.* An undue hardship means that the employer would incur significant difficulty or expense in providing the accommodation. Factors to consider in determining whether an accommodation would impose undue hardship are: (1) the nature and the cost of the accommodation; (2) the overall financial resources of Defendant and

the number of persons employed by Defendant; and (3) the type of Defendant's business, including the composition, structure, and functions of Defendant's workforce."

(Emphasis added.) The court declined to give plaintiff's instruction and gave the following one instead:

"When we talk about reasonable accommodation, a reasonable accommodation is one that enables an employee to perform the essential functions of the job.

"To establish a defendant's duty to provide reasonable accommodation, the plaintiff must prove that the defendant could have made reasonable accommodation that would have enabled plaintiff to perform the essential functions of the job.

"A reasonable accommodation may include modification or adjustment to the work environment or to the manner or circumstance under which the job is customarily performed.

"What is a reasonable accommodation in one situation is not necessarily a reasonable accommodation in every situation. In some situations, there may not be reasonable accommodation available.

"An employer is not required to eliminate one or more essential job functions as a reasonable accommodation.

"A transfer or reassignment to another position may be a reasonable accommodation only if there is an open and existing position and the employee is able to perform all the essential functions of that existing position.

"Now, an employer is not required to create a new position as reasonable accommodation.

"An employer is only required to reasonably accommodate a known physical limitation of a qualified disabled person. An employer is not required to accommodate based on physical limitations of which it has no knowledge."

We review a trial court's ruling on a request for a jury instruction to determine whether the given instruction probably created an erroneous impression of the law in the minds of the jurors and, if so, whether that erroneous impression affected the outcome of the case. *Bennett v. Farmers Ins. Co.,* 150 Or App 63, 72-73, 945 P2d 595 (1997), *aff'd,* 332 Or

138, 26 P3d 785 (2001). An error in refusing to give a requested jury instruction requires reversal only if the requested instruction clearly, concisely, and accurately stated the applicable legal principles. *Hagan v. Gemstate Manufacturing, Inc.*, 328 Or 535, 544, 982 P2d 1108 (1999). We conclude that the instruction given by the trial court was a correct statement of the law and that the instruction requested by plaintiff was not.

■     The disputed difference between the instruction that plaintiff requested and the one that the court gave involves the role that "undue hardship" plays in a wrongful termination case under ORS 659A.112(2)(e). That statute provides that an employer commits an unlawful employment practice if

> "[t]he employer does not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled person who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer."

According to plaintiff, once an employee proposes an accommodation, the employer in every case has the burden of proving that the proposed accommodation is not reasonable, and to do so it must prove that making the accommodation would impose an undue hardship. Plaintiff, in other words, contends that any accommodation that does not cause undue hardship is necessarily reasonable; his requested instruction declares, "An employer must accommodate an individual with a disability unless the employer proves by a preponderance of the evidence that such accommodation would impose an undue hardship," and he argues that the "concept of reasonable accommodation is necessarily joined to the counterweight of undue hardship."

Defendant, on the other hand, responds that accommodation and undue hardship are distinct concepts and that an accommodation may be unreasonable even if it does not impose an undue hardship. Under defendant's theory of how the statute operates, the employee has the initial burden of proving that a reasonable accommodation exists, and the employer's duty to prove undue hardship arises only if the

employee first makes that showing. If an employer chooses, as defendant did here, to base its case on the theory that plaintiff never met his initial burden of proving that a reasonable accommodation exists, then the employer does not need to raise undue hardship as a defense, and no jury instruction on that issue is even relevant, much less required.

Defendant is correct. Plaintiff's theory relies on a version of Oregon's disability law that was undermined by amendments in 1997. Before that time, the predecessor statute to ORS 659A.112(2)(e)[1] prohibited discharging an employee because of a "physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved[.]" The statute itself said nothing about undue hardship. This court chose to adopt the undue hardship standard as defined in the Bureau of Labor and Industries administrative rules at *former* OAR 839-06-205(8) (1991) and *former* OAR 839-06-245(8) (1991). *Blumhagen v. Clackamas County*, 91 Or App 510, 517 n 9, 756 P2d 650, *rev den*, 306 Or 527 (1988); *see also Braun v. American International Health*, 315 Or 460, 846 P2d 1151 (1993); *Holmes v. Willamette University*, 157 Or App 703, 711, 971 P2d 914 (1998), *modified on recons*, 158 Or App 485, 975 P2d 922, *rev den*, 329 Or 357 (1999). *Former* OAR 839-06-245 provided:

> "ORS 659.425 imposes an affirmative duty upon an employer to make reasonable accommodation for an individual's physical or mental impairment where the accommodation will enable that individual to perform the work involved in the position occupied or sought:
>
> "(1)   Accommodation is a modification or change in one or more of the aspects or characteristics of a position * * *.
>
> "* * * * *
>
> "(2)   *Accommodation is required where it does not impose an undue hardship on the employer* * * *."

(Emphasis added.) That rule could be read to define any accommodation that did not impose an undue burden as

---

[1] *Former* ORS 659.425(1)(a) (1995).

being, for that reason alone, reasonable. The rules, in other words, conflated the concepts of reasonableness and hardship by defining the reasonableness of an accommodation in terms of the impact it would have on the employer. Plaintiff's requested instruction, therefore, arguably would have been a correct statement of the law under earlier statutes and rules.

However, in 1997 the legislature amended the statutes into their current form. Or Laws 1997, ch 854, §§ 2-5. The governing principle at issue in this case, expressed in ORS 659A.112(2)(e), now refers explicitly to both reasonable accommodation and undue hardship: An employer commits an unlawful employment practice *if* it "does not make reasonable accommodation * * * *unless* the employer can demonstrate that the accommodation would impose an undue hardship * * *." (Emphasis added.) Generally, then, an employer must make a reasonable accommodation; however, an exception to the rule exists where the employer can demonstrate that the reasonable accommodation imposes an undue hardship. "Reasonable accommodation" is defined in terms of actions an employer might be required to take: altering facilities or equipment, restructuring work schedules, or providing interpreters. ORS 659A.118. "Undue hardship," on the other hand, is defined in terms of the impact that the reasonable accommodations will have on the employer, including:

"(a)  The nature and the cost of accommodation needed.

"(b)  The overall financial resources of the facility * * * involved in the provision of the accommodation, the number of persons employed at the facility, and the effect on expenses and resources or other impacts on the operation of the facility caused by the accommodation.

"(c)  The overall financial resources of the employer, the overall size of the business of the employer with respect to the number of its employees and the number, type and location of the employer's facilities.

"(d)  The type of operations conducted by the employer, including the composition, structure and functions of the workforce of the employer and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the employer."

ORS 659A.121(2). Further, the old rules defining "reasonable accommodation" in terms of what is *not* an undue burden, *former* OAR 839-06-205(8) (1991) and OAR 839-06-245(8) (1991), were repealed in 1998. Adm Order No BLI 2-1998. The result of these changes is that now an accommodation must be *reasonable*, not simply exist, before any potential "undue hardship" resulting from that accommodation can be considered.

The instruction given by the trial court accurately reflects the current statutes and rules. That instruction incorporated the definition of reasonable accommodation in ORS 659A.112(2)(e) without confusing the issues of employer action with the issue of employer impact. And although plaintiff correctly insists that an employer has the burden of establishing undue hardship, his suggested instruction is wrong insofar as it asserts that the employer must establish undue hardship even if the employer, like defendant here, rests its defense on plaintiff's failure to establish the existence of a reasonable accommodation in the first instance. Defendant had no burden to establish undue hardship unless plaintiff could establish a reasonable accommodation. The court's instruction correctly, clearly, and concisely instructed the jury as to what a reasonable accommodation was. The jury decided that plaintiff never established the existence of one. The issue of undue hardship, on defendant's theory of the case, never arose.

The correctness of this analysis is confirmed by another legislative change enacted in 1997. ORS 659A.139[2] provides that Oregon's statutes regulating discrimination based on disability "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act [ADA] of 1990, as amended." In *US Airways, Inc. v. Barnett*, 535 US 391, 402, 122 S Ct 1516, 152 L Ed 2d 589 (2002), the United States Supreme Court held that, in an action under the ADA, a

---

[2] Although Oregon law can incorporate an existing version of federal law, for example "The ADA of 1990," an attempt to incorporate amendments that Congress might make in the future would raise serious difficulties under Article I, section 21, of the Oregon Constitution, which prohibits enacting any law "the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution[.]" *See Seale et al v. McKennon*, 215 Or 562, 572-73, 336 P2d 340 (1959).

plaintiff has the burden of establishing the availability of an accommodation that is generally regarded as reasonable, and that once that occurs the burden shifts to the employer to establish undue hardship. *See also* 29 CFR 1630.15(d) ("It may be a defense to a charge of discrimination * * * that a requested or necessary accommodation would impose an undue hardship * * *."). That scheme of shifting burdens is identical to the Oregon rule as we have construed it: A plaintiff has the burden of establishing that the employer can make a reasonable alteration or adjustment to its practices; once that occurs, and only if that occurs, the burden shifts to the employer to demonstrate that the accommodation, although reasonable, is nonetheless an undue hardship. In the language of the statute, the employer commits an unlawful practice *"if* the employer * * * does not make reasonable accommodation, * * * *unless* the employer can demonstrate that the accommodation would impose an undue hardship * * *." ORS 659A.112(2) (emphasis added).

In sum, the trial court did not err in refusing to instruct the jury that defendant, in order to prevail, had to prove that accommodating plaintiff would impose an undue hardship. Defendant had to prove that fact only if plaintiff proved that defendant could, in fact, provide a reasonable accommodation. Defendant chose to rest its case on the theory that plaintiff never made that predicate showing. Giving plaintiff's instruction would therefore have been legal error. The court gave the correct instruction, and, presumably following it, the jury agreed that plaintiff never established that a reasonable accommodation existed.

Plaintiff also assigns error to the admission of evidence regarding the financial condition of Cascade General to the extent that the testimony involved information not available to defendant when it fired plaintiff. The argument stems from one of the central disputes in the case, that is, whether defendant's agent in charge of the Cascade General shipyard fired plaintiff not because the agent believed the shipyard would remain closed as a consequence of Cascade General's financial trouble, but because of plaintiff's disability or his having filed a claim for workers' compensation benefits. According to plaintiff, Cascade General's financial condition

was relevant only insofar as defendant's agent was aware of it.

■ We reject this assignment of error because plaintiff failed to preserve it. Before defendant called witnesses who were to testify about Cascade General's financial condition, plaintiff objected on the ground that this evidence would be "irrelevant and highly prejudicial" to plaintiff. After a colloquy with the court, the parties agreed that questions asked of these witnesses would be limited to the information relayed to plaintiff's agent by the management of RTS and Cascade General. However, at the conclusion of this testimony, plaintiff did not raise any objections to defendant's purported failure to tie the testimony of its witnesses to the knowledge of plaintiff's agent at the time plaintiff was laid off. Plaintiff argues that, because defendant's failure to "tie up" the evidence was not apparent until after all of defendant's witnesses had testified, it was unrealistic to expect plaintiff to make precise objections to the testimony at the time it was presented. While this may or may not be true, it does not change the fact that plaintiff failed to object to or move to strike any of the testimony even when it had ended. He therefore failed to preserve that issue for our review.

■ Finally, plaintiff argues that the trial court erred in admitting evidence of a list of persons who had filed workers' compensation claims against defendant between 1988 and October 2001. The trial court allowed defendant's operations manager to testify as to the contents of the list. According to plaintiff, that testimony should have been excluded under OEC 403, because it was unfairly prejudicial, and OEC 404, because it was evidence of other acts introduced to show that defendant acted in conformity with a character trait. To the extent that plaintiff argues that the evidence simply was not relevant under OEC 401, we reject that argument. The threshold for relevancy is quite low. *E.g.*, *State v. Sparks*, 336 Or 298, 307, 83 P3d 384 (2004); *Woodbury v. CH2M Hill, Inc.*, 189 Or App 375, 383, 76 P3d 131 (2003), *rev den*, 336 Or 615 (2004). Defendant's treatment of other workers' compensation claims was relevant evidence of whether or not defendant had a discriminatory practice or policy, an issue raised by plaintiff's claim for punitive damages. *See Stranahan v.*

*Fred Meyer, Inc.*, 153 Or App 442, 462-63, 958 P2d 854 (1998), *rev'd on different grounds,* 331 Or 228, 11 P3d 228 (2000). Because the evidence was logically relevant, the trial court had no discretion to exclude it on that ground. *State v. Titus,* 328 Or 475, 481, 982 P2d 1133 (1999).

■ ■    We will generally defer to a trial court's decision under OEC 403 about whether or not the probative value of evidence is substantially outweighed by the danger of unfair prejudice. *State v. Williams,* 313 Or 19, 29-30, 828 P2d 1006 (1992), *cert den,* 506 US 858 (1996). Evidence is unfairly prejudicial if it appeals to the preferences of the factfinder for reasons that are unrelated to its power to establish a material fact. *State v. Barone,* 328 Or 68, 87, 969 P2d 1013 (1998), *cert den,* 528 US 1135 (2000). Plaintiff's sole argument with respect to prejudice is that the evidence was prejudicial because it was irrelevant. It was not, as explained above. The trial court did not err to the extent that it ruled that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

■ ■    If evidence of "other crimes, wrongs or acts" is independently relevant on a nonpropensity theory, it is admissible for that limited purpose under OEC 404(3). *State v. Baughman,* 164 Or App 715, 721, 995 P2d 551 (2000). As with any relevancy determination, we review the trial court's conclusion that other acts evidence is relevant for a nonpropensity purpose for errors of law. *Titus,* 328 Or at 481; *Rugemer v. Rhea,* 153 Or App 400, 406, 957 P2d 184 (1998). Here, defendant argued that the list of other persons who had filed workers' compensation claims and the testimony of the operations manager about the contents of that list was relevant for the nonpropensity purpose of establishing that it acted without a discriminatory motive. When, as in this case, a plaintiff has sought punitive damages, whether the defendant has engaged in a pattern of similar misconduct is relevant to determining the propriety and amount of punitive damages. *Stranahan,* 153 Or App at 462-64. Because the evidence was relevant for a valid nonpropensity purpose, the trial court did not err in admitting it under OEC 404(3).

Affirmed.